**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**


**MAGNOLIA WELLNESS GROUP LLC, et al.**                                 **PLAINTIFFS**

**v.**                                 **CAUSE NO: 3:25-CV-00222-JDM-RP**

**BRIAN R. KAHN, et al.**                                        **DEFENDANTS**


**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO DIMISS
<u>FOR LACK OF PERSONAL JURISDICTION</u>**


According to this fraud-and-misrepresentation-based lawsuit, had Magnolia Wellness[1] known The Vitamin Shoppe's parent company—the Franchise Group Inc.—was headed by a crooked CEO, it would never have entered franchise agreements to sell vitamins and supplements.

But when Magnolia Wellness ultimately sued for being fraudulently induced to do business, it did not name the Franchise Group, The Vitamin Shoppe Inc., or The Vitamin Shoppe Franchising LLC as defendants. That's because these three companies filed for Chapter 11 bankruptcy. And as part of the bankruptcy, their debts and liabilities to franchisees like Magnolia Wellness were discharged. So Magnolia Wellness could not bring any franchise-based claims against these corporations.

Facing this legal dead end, Magnolia Wellness instead has sued twenty-four of these companies' officers and directors—individually. In its amended complaint, Magnolia Wellness refers to the individual defendants collectively as the "Leadership" of the Franchise Group or its The Vitamin Shoppe subsidiaries. And it asserts this corporate "Leadership" engaged in

---

[1] Plaintiffs Magnolia Wellness Group LLC and Magnolia Wellness Group 2 LLC are referred to as "Magnolia Wellness."

conspiratorial conduct that fraudulently induced it to enter franchise agreements that did not deliver.

But there is a problem with Magnolia Wellness's work-around strategy. While these individual company directors and officers were not covered by the bankruptcy discharge, they cannot be held liable based simply on their leadership roles in the discharged corporations.[2] Rather, individual liability stems from "individual wrongdoing."[3] And before the Court can even reach the merits of the alleged individual wrongdoing, there must be *individual* personal jurisdiction.[4]

There's the rub—at least for suing the already-served Defendants who have responded with a motion to dismiss for lack of personal jurisdiction. [38] None of these individual Defendants reside in Mississippi—and one Defendant does not even reside in the United States. So before the Court can exercise personal jurisdiction over them, both Mississippi's Long-Arm Statute[5] and constitutional due-process requirements must be satisfied.[6] And here both are missing.

Magnolia Wellness asked for and the Court granted it jurisdictional discovery. But the discovery yielded no evidence that any Defendant, in his or her individual capacity, formed a contract in Mississippi, committed any tort in Mississippi, or conducted personal business in Mississippi. Instead, Magnolia Wellness mentions only the Defendants' work as corporate officers and directors—company work that furthered the Franchise Group's and The Vitamin Shoppe's

---

[2] *Hardy v. Brock*, 826 So. 2d 71, 75 (Miss. 2002); *Turner v. Wilson*, 620 So. 2d 545, 548 (Miss. 1993).

[3] *Turner*, 620 So. 2d at 548.

[4] *Robertson v. Grey Ventures, LLC*, 802 F. Supp. 3d 972, 975 (N.D. Miss. 2025) (applying "well-settled precedent that courts should first consider whether they have jurisdiction over a case before considering its merits"); *Cole v. Alton*, 567 F. Supp. 1081, 1083 (N.D. Miss. 1983) (requiring individual jurisdiction over the individually named defendants).

[5] Miss. Code Ann. § 13-3-57.

[6] *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997).

general business of establishing franchises across the nation, including Mississippi. And these corporate acts cannot be attributed personally to the individual defendants to establish personal jurisdiction.[7]

Since Magnolia Wellness has "not alleged or shown that the individuals committed any act in this state of a personal nature apart from the corporate function,"[8] this Court cannot exercise personal jurisdiction over them.

To be sure, had Magnolia Wellness been able to sue the Franchise Group, The Vitamin Shoppe, Inc., and The Vitamin Shoppe Franchising LLC, those companies' contracts with Magnolia Wellness in Mississippi, and their franchise activities directed toward Mississippi, would establish personal jurisdiction here. But personal jurisdiction cannot be imputed vicariously from the discharged corporate entities to the individual directors and officers.

Because this Court lacks personal jurisdiction over the twenty-three Defendants who joined the Motion to Dismiss, the Court grants their motion. [38] The claims against these Defendants are DISMISSED without prejudice for lack of jurisdiction.

**Background Facts & Procedural History**

I.      **Amended Complaint**

Magnolia Wellness initiated this action on July 31, 2025. It followed up with an amended complaint on August 21, 2025. [2] The amended complaint names twenty-four individuals as defendants. And it describes them as either directors or officers of the Franchise Group, The Vitamin Shoppe Inc., or The Vitamin Shoppe Franchising LLC. These individuals are collectively referred to as "Leadership."

---

[7] *Webb v. Culberson, Heller & Norton, Inc.*, 357 F. Supp. 923, 925 (N.D. Miss. 1973).
[8] *Cole*, 567 F. Supp. at 1084.

3

The amended complaint alleges that in 2023 Magnolia Wellness entered into two franchise agreements to open The Vitamin Shoppe locations in Oxford and Olive Branch, Mississippi. For most of its forty-year existence, The Vitamin Shoppe's multiple locations were company-owned stores, not franchises. But in 2019, the Franchise Group bought The Vitamin Shoppe and began selling franchises in 2021.

According to the amended complaint, "[t]he pitch was strong—the reality was different." Leadership supposedly led Magnolia Wellness to believe the new franchises would operate like and be as profitable as company-owned stores. But Leadership did not follow through on promised proprietary inventory software and marketing support—concerns from the franchisees that Leadership largely dismissed.

Then in November 2024, the Franchise Group and its affiliates filed for bankruptcy. At first, Leadership assured Magnolia Wellness and other franchisees that "everything will remain business as usual." But days later, Franchise Group moved to reject all franchise agreements— including Magnolia Wellness's. Leadership announced franchises would have to stop operating as The Vitamin Shoppes by February 2025. And Leadership followed up with a cease-and-desist letter on February 5, 2025. In June 2025, the bankruptcy court approved Franchise Group's reorganization plan—a plan that discharged its and The Vitamin Shoppe's debts, including any potential claims by franchisees. When this happened, Magnolia Wellness was allegedly left "with a bank loan, two leases for two stores that could no longer operate as The Vitamin Shoppe, and a lot of inventory it never ordered."

Magnolia Wellness further alleges only after its relationship with The Vitamin Shoppe ended did it learn that Franchise Group's CEO Brian Kahn "had been implicated in a 'staggering' conspiracy to defraud." Kahn had also been a money manager for an investment fund known as

4

Prophecy Asset Management. And he fraudulently used Prophecy funds to underwrite the Franchise Group. Kahn's fraud led to an investor lawsuit in 2022 and a Securities and Exchange Commission complaint filed in 2023.

What's now before this Court is Magnolia Wellness's lawsuit accusing the other officers and directors of the Franchise Group of both knowing about Kahn's fraud and covering it up. And Magnolia Wellness insists, had the leaders of Franchise Group disclosed that Kahn was under SEC investigation, it would never have entered the franchise agreements.

The amended complaint brings six counts—(1) Civil Conspiracy, (2) Aiding and Abetting, (3) Fraudulent Misrepresentation, (4) Fraudulent Concealment, (5) Negligent Misrepresentation, and (6) RICO Act Violations.

## II. Motion to Dismiss

In November 2025, Magnolia Wellness served the individual defendants—except for lead defendant Brian Kahn, who has proved elusive.

On January 5, 2026, the Defendants—except Kahn—filed a motion to dismiss under Federal Rule of Procedure 8 (general pleadings standard), 9(b) (heightened fraud pleadings standard), 12(b)(6) (failure to state a claim), and 12(b)(2) (lack of personal jurisdiction).[9] [38] The lack-of-jurisdiction assertion triggered a stay. [41] As part of its response in opposition, Magnolia Wellness requested the stay be lifted so it could conduct jurisdictional discovery. [45] The Court granted that request. [54]

---

[9] Magnolia Wellness contends The Vitamin Shoppe CEO Lee Wright did not join the motion to dismiss for lack of personal jurisdiction but instead conceded personal jurisdiction. Magnolia Wellness takes this position based on Wright's name not being included in the personal jurisdiction discussion in the memorandum supporting the motion to dismiss. [39] But Wright clearly joined the 12(b)(2) motion, which controls. [38] And if there was any doubt, the Defendants' post-discovery supplement brief makes clear that Wright contends Magnolia Wellness has not met its burden to establish personal jurisdiction over him. [91, 91-5]

After discovery, the Court permitted Magnolia Wellness to file a supplemental brief [89] and the Defendants to file a reply [91]. With jurisdictional discovery and supplemental briefing concluded, the jurisdiction issue is now ripe for ruling.

### Personal Jurisdiction Requirements

Without dispute, none of the individually named Defendants reside in Mississippi. So Mississippi's Long-Arm Statute governs whether this Court can exercise personal jurisdiction over each defendant. Miss. Code Ann. § 13-3-57. The statute requires each individual to have either "ma[d]e a contract with a resident of this state to be performed in whole or in part by any party in this state," or "commit[ed] a tort in whole or in part in this state against a resident or nonresident of this state," or "done any business or perform any character of work or service in this state[.]" *Id.*

On top of the Long-Arm Statute, there are constitutional due-process concerns at play. *See Allred*, 117 F.3d at 281. "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

"Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court"—in this case Magnolia Wellness—"bears the burden of proving that jurisdiction exists." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)). "In considering a motion to dismiss for lack of personal jurisdiction a district court may consider 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)).

**Personal Jurisdiction Analysis**

Hoping to meet its burden, Magnolia Wellness offers various facts about the individual defendants. [89] But despite its best efforts, Magnolia Wellness simply has not established personal jurisdiction over any Defendant.

This is because Magnolia Wellness's "jurisdictional facts" focus solely on these individuals' *corporate roles and actions*. It has "not alleged or shown that the individuals committed any act in this state of a *personal nature* apart from the corporate function." *Cole*, 567 F. Supp. at 1084 (emphasis added). And jurisdiction "over the corporate entity cannot, without more, confer jurisdiction over the officers and shareholders individually." *Id.* at 1083 (citing *Webb*, 357 F. Supp. at 925). Instead, what is required is "[s]ome independent, individualized contacts . . . between the nonresident defendants and the forum." *Id.*

The Court starts with the Franchise Group directors. What is immediately evident is that Magnolia Wellness *does not* address this group as individuals—let alone establish any director had independent, individualized contacts with Mississippi. Rather, Magnolia Wellness broadly paints the directors collectively as being "in the franchise business, meaning their purpose was to establish locations across the United States, including in Mississippi." But actions that further a corporation's business "are the acts of the corporation." *Webb*, 357 F. Supp. at 924 (quoting *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952)). And the bare fact the Franchise Group conducted business nationally does not convey nationwide jurisdiction over its directors as individuals. *Id.*

Considering the Franchise Group and The Vitamin Shoppe officers, Magnolia Wellness *does* address each officer one-by-one. But in doing so, it still pushes general corporate business notions—that many of the named officers "had personal responsibility for franchise-related

7

decision-making generally, which would have affected Magnolia specifically." It also describes various officers as being part of the "senior team"—some of whom were involved in franchise strategy. Others were purportedly responsible for disclosure decisions, choices which necessarily included not disclosing Kahn's fraud. And Magnolia Wellness cites an interest meeting its principles attended in Dallas, Texas. Different meetings with Magnolia Wellness principles in Memphis and New Orleans are also mentioned. So are numerous "direct personal communications" with various company officers, including a photo of The Vitamin Shoppe Franchise Director David Denker in Mississippi attending a Magnolia Wellness store opening. Significance is also assigned to a video call to all franchisees during which several officers addressed terminating franchise contracts.

But wholly missing from all of these examples is the lynchpin requirement to establish individual, personal jurisdiction—that any officer or director took any action in his or her *personal* capacity. When considered in their context, the meetings, communications, franchise strategy, and franchise terminations were all corporate contacts. None were specifically made by any individual officer on his or her personal behalf. Instead, every single contact was made on The Vitamin Shoppe's behalf to solicit or perform the franchise contracts with Magnolia Wellness.[10]

And these corporate acts do not create jurisdiction. That's because "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation."[11] *Stuart*, 772 F.2d at 1197.

---

[10] This includes the contacts made by the two John Does identified in the supplemental brief as Scott Harvey and Jason Mattes. [89] Their actions were on the Franchise Group's behalf.

[11] The Court notes there is an exception for piercing-the-corporate-veil cases. *Stuart*, 772 F.2d at 1197. But among other things, piercing requires "flagrant disregard of corporate formalities." *Hardy*, 826 So. 2d at 75. As in *Hardy*, Magnolia Wellness has neither alleged nor presented

In *Webb*, like this case, the plaintiff alleged individual officers conspired with each other and the corporation to breach the plaintiff's contract. *Id.* at 924. But this Court disagreed. It found any injury from the alleged breach "was occasioned by the decisions, actions and activities of the individual defendants who were acting in the scope of their employment and in the furtherance of the business of the corporation by which they were employed." *Id.* "It [wa]s not alleged that the individual defendants committed any act of a *personal* nature except in connection with the corporate affairs." *Id.* (emphasis added). Thus, this Court concluded it lacked personal jurisdiction over the non-resident officers. *Id.* at 925.

The same is true here. Magnolia Wellness presents only corporate action. Even after being granted jurisdictional discovery, it shows no evidence that the named officers and directors had any "purpose or intent on their part to 'do business' *as individuals*" in Mississippi. *Cole*, 567 F. Supp. at 1083 (emphasis added); *see also Charles v. Al-Anssi*, No. 1:06CV556-LG-RHW, 2007 WL 843843, at *5 (S.D. Miss. Mar. 19, 2007) (finding no individual jurisdiction over the defendant corporation's CEO because the plaintiff had "not set forth any independent, individualized contacts between [the CEO], a Georgia resident, and the State of Mississippi). Undoubtedly, Magnolia Wellness's attorneys searched diligently. But without "[s]ome independent, individualized contacts" between the non-resident Defendants and this forum, this Court lacks personal jurisdiction over the Defendants. *Cole*, 567 F. Supp. at 1083. So its claims cannot proceed against them.

---

evidence that the corporate veil should be pierced if Defendants were acting in their corporate capacity. *Id.* Instead, Magnolia Wellness specifically seeks to hold the individual Defendants liable for their individual actions. *Id.*

**Conclusion**

The Defendants' Motion to Dismiss [38] is **GRANTED**.  Because the dismissal is based on the Court's lack of personal jurisdiction, the dismissal is without prejudice.

The Court **DISMISSES without prejudice** all claims against the following Defendants:

Matthew E. Avril

Cynthia S. Dubin

Lisa M. Fairfax

Thomas Herskovits

Gary S. Rich

Nanhi Singh

Eric F. Seeton

Andrew M. Laurence

Andrew F. Kaminsky

Tiffany McMillan-McWaters

Kenneth Todd Evans

Lee Wright

Andrew Laudato

Muriel F. Gonzalez

Laura Coffey

Sharon M. Leite

Neal Panza

David Denker (erroneously referred to in the case style as David Decker)

Ted Vasquez

10

Carla Lopez

Mike Bruner

Melissa Altmix

Sheri Israel-Duarte

The only remaining Defendant is Brian R. Kahn.

With the jurisdictional challenge resolved, the Court **LIFTS** the **STAY**.  [41]

**SO ORDERED**, this the 7th day of August 2026.

                /s/ James D. Maxwell, II
                UNITED STATES DISTRICT JUDGE
                NORTHERN DISTRICT OF MISSISSIPPI